# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| RICHARD B. WOODFORD,<br><br>Plaintiff,<br><br>v.<br><br>ROB ROBILLARD et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:11-CV-370 CW<br><br>District Judge Clark Waddoups |

Plaintiff, Richard Woodford, filed this *pro se* civil rights suit under 42 U.S.C. § 1983. *See* 42 U.S.C.S. § 1983 (2013). Plaintiff was allowed to proceed *in forma pauperis*. *See* 28 *id.* § 1915. Before the Court are Plaintiff's motions to compel discovery and to strike certain evidence, and Washington County Defendants' Motion for Summary Judgment[1].

## I. Background

Plaintiff's Complaint originally asserted twenty-five separate claims against nine named defendants. The essence of Plaintiff's allegations is that he was falsely arrested for failure to pay child support and jailed under inhumane conditions, that during the arrest he was injured by the

---

[1] The full title of Defendants' motion is "Washington County Defendants' Motion for Summary Judgment and/or Motion to Dismiss" (Doc. No. 52), but it was erroneously docketed as "Motion to Dismiss for Failure to State a Claim." In accordance with Rule 12(d), the motion must be treated as one for summary judgment under Rule 56 because it relies on materials outside the pleadings. *See* Fed. R. Civ. P. 12(d); Fed. R. Civ. P. 56. However, because Plaintiff was formally instructed regarding his burden on summary judgment (Doc. No. 48 at 10) and was afforded a reasonable opportunity to present all material pertinent to the motion, Plaintiff cannot show any prejudice resulting from the erroneous docket entry.

arresting officer's use of excessive force, and that following his arrest he continued to suffer

injury, harassment and persecution stemming from the ongoing child support enforcement

action.  Plaintiff's Complaint sought declaratory and injunctive relief as well as compensatory

and punitive damages totaling $35,750,000.  On April 6, 2012, the Court entered a Memorandum

Decision and Order (Doc. No. 48) dismissing numerous claims and defendants and directing the

remaining defendants to file a *Martinez* Report addressing Plaintiff's claims.[2]

On July 5, 2012, Defendants filed a *Martinez* Report (Doc. No. 49) with numerous

exhibits, including the Bench Warrant underlying Plaintiff's arrest (Ex. 3), various court

documents related to the incident, and audio recordings of Plaintiff's state court hearings (Ex. 5).

Defendants also filed the present motion for summary judgment based on the evidence presented

in their *Martinez* Report.  In response, Plaintiff filed a Motion to Compel Discovery (Doc. No.

52) asserting that Defendants had failed to supply sworn declarations of the officers involved, as

instructed by the Court.  Defendants responded by acknowledging the oversight and filing the

required declarations along with additional supporting documents.  (Doc. Nos. 58-61.)  Plaintiff

then moved to strike these responses and also portions of Defendants' *Martinez* Report.  (Doc.

No. 64.)  Each of these motions are now fully briefed and properly before the Court.[3]

---

[2] In *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), the Tenth Circuit approved the practice of district courts ordering government officials to file a report addressing the plaintiff's claims in cases where a prisoner alleges a constitutional violation while in custody.

[3] Although the docket does not show that Plaintiff filed a formal opposition memorandum to Defendants' summary judgment motion, Plaintiff has filed numerous memoranda and supporting documents related to his motions to compel and to strike.  These also include detailed responses to Defendants' summary judgment materials.  (Doc. Nos. 54, 64-65, 68-69.) Because Plaintiff was formally instructed regarding his burden on summary judgment

## II.  Plaintiff's Motion to Compel

Although styled as a motion to compel discovery and for sanctions, Plaintiff's motion is more akin to a memorandum opposing Defendants summary judgment motion.  The only specific documents Plaintiff seeks through additional discovery are the sworn declarations mentioned previously.  However, as noted, in response to Plaintiff's motion to compel Defendants' counsel openly acknowledged the failure to provide those declarations and promptly corrected the oversight.  Plaintiff has not shown that he suffered any prejudice from the delay in producing these documents, nor has he identified any additional documents that Defendants failed to provide which are necessary for him to respond summary judgment.  Thus, Plaintiff's motion to compel and for sanctions is denied.

## III.  Plaintiff's Motion to Strike

Plaintiff moves to strike several documents included with the *Martinez* Report and several attachments to Defendants' declarations as unauthenticated, impertinent or otherwise inadmissible.  First, Plaintiff asserts that the first six pages of Exhibit 4 to Defendants' *Martinez* Report (Washington County Sheriff's Office Jail Log) are impertinent because they document a 2007 arrest unrelated to his present claims.  However, Defendants have shown that this information is relevant because it directly relates to Plaintiff's arguments about booking information maintained and disseminated by Washington County.[4]

_____

(Doc. No. 48 at 10), the Court will consider all of these documents as Plaintiff's opposition brief.

[4]  Plaintiff also asserts that this information is private and should not be publicly available on the Court's PACER system.  Elsewhere, however, Plaintiff admits that the same information is publicly available through various sources on the web.  Moreover, Plaintiff has not filed a

Second, Plaintiff moves to strike the Bench Warrant which led to his November 17, 2009, arrest as inadmissible, asserting that it is fabricated and not a true and correct copy.  Plaintiff initially challenges the admissibility of this document on the ground that an earlier submitted copy (Doc No. 49, Ex. 2) was not certified, while a later copy is certified (Doc. No. 59, Ex. 2).  Other than the certification on the later copy, these documents appear to be identical.  Moreover, Defendants apparently only submitted the certified copy because of Plaintiff's arguments regarding the authenticity of the earlier copy.  Next, Plaintiff asserts that the Bench Warrant is invalid because it is not file stamped by the court, but the lack of a file stamp has nothing to do with the document's authenticity, which is attested to by the notarized signature of a Deputy Court Clerk at the Utah Fifth District Court and by its entry on the official court docket.[5] Plaintiff also challenges the authenticity of the Bench Warrant based on the one-day delay in entering it on the docket, however, such a brief delay is completely normal and is not grounds for questioning the document's authenticity.   Thus, Plaintiff's arguments about the admissibility of the Bench Warrant are specious.

Finally, Plaintiff challenges the admissibility of the audio recordings of the child support enforcement hearings held in state court, including the hearing immediately following his challenged arrest.  Although Plaintiff admits that these recordings are relevant to his present claims, he asserts that they are not authentic and may have been altered.  Plaintiff's only

formal motion to have these documents sealed.

[5]  There is no evidence the Bench Warrant was processed abnormally, however, even if that were the case, it would not undermine its validity, much less support a claim against the officers who later served it.

4

evidence to support this assertion is certain purported discrepancies between the file information embedded on the disc he obtained previously through a records request and the one submitted by Defendants for the record here.  However, other than his own lay opinion, Plaintiff has not presented any evidence supporting his assertion that this embedded file information shows that the recordings submitted to the court to have been altered.[6]  Moreover, Plaintiff does not specifically state what alterations he believes were made or how they might prejudice his case. And, the Court has reviewed both recordings and does not find any significant differences between them or obvious signs of alteration.

Thus, Plaintiff's motion to strike is denied.

## IV.  Defendants' Motion for Summary Judgement

Defendants present several legal grounds supporting their motion for summary judgment. First, Defendants assert that the evidence presented does not support the conclusion that Plaintiff's constitutional rights were violated.  Second, Defendants argue that even if Plaintiff could show a constitutional violation there is no basis for municipal liability here and the individual Defendants are entitled to qualified immunity.  Finally, Defendants assert that Plaintiff's remaining state law claims are barred based on Plaintiff's failure to comply with the requirements of the Governmental Immunity Act of Utah.  *See* Utah Code Ann. §§ 63G-7-101 et. seq..

---

[6]  The Court notes that the disc submitted by Defendants was prepared by a professional court reporting company, Orange Legal Technologies.  While the disc submitted by Plaintiff is a copy he made himself of a disc he acquired earlier.  It is conceivable that the discrepancies in the file information noted by Plaintiff are the result of how the discs were produced.

## A.  Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."  *Cellotex v. Catrett*, 477 U.S. 317, 324 (1986).  The party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case."  *Cellotex*, 477 U.S. at 325.  This burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case.  *Johnson v. City of Bountiful*, 996 F. Supp 1100, 1102 (D. Utah 1998).  Once the moving party satisfies its initial burden, "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element."  *Id.*  A fact in dispute is "material" only if it might affect the outcome of the suit under governing law.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  The dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A non-movant who "would bear the burden of persuasion at trial" must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant."  *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998).  Mere allegations and references to the pleadings will not suffice, instead, the specific facts put forth by the non-movant "must be identified by reference to an

6

affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling*, 968 F.2d 1022, 1024 (10th Cir. 1992). Moreover, "the nonmoving's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

### B.  Material Facts[7]

1.      On January 1, 2009, an action was commenced against Plaintiff by the State of Utah Office of Recovery Services to enforce a child support order entered in the State of Nevada. (Doc. 49, Ex. 1, Utah Fifth District Court Docket.)

2.      On August 7, 2009, Plaintiff failed to appear in response to an Order to Show Cause that had been issued by The Honorable Eric A. Ludlow in Utah's Fifth District Court. (Id. at 2.) However, Plaintiff states that he never received notice of this hearing.

3.      On August 13, 2009, Judge Ludlow issued an Order to Show Cause regarding Plaintiff's failure to appear on August 7, 2009, and scheduled a hearing on the matter for August 28 , 2009. (Doc. No. 49, Ex. 1, at 3; Doc. No. 49, Ex. 2, Order to Show Cause.) That same day, Judge Ludlow also issued a Bench Warrant for Plaintiff's arrest. (Doc. No. 59, Ex. 2, Bench

_____

[7] These facts are drawn from the parties summary judgment briefs, the *Martinez* Report, and related documents. The facts are construed in the light most favorable to Plaintiff. Except as noted, these facts are undisputed.

Warrant.)  The warrant was signed on August 13, 2009, and entered on the docket the following day.  (Id.; Doc. No. 49, Ex. 1, at 3.)

4.      On November 17, 2009, Plaintiff was at the Washington County Courthouse on another matter.  (Compl. (Doc. No. 3) at 4.)  While sitting in the gallery of the courtroom Plaintiff was approached by Defendant Robillard, a Deputy with the Washington County Sheriff's Office, and asked if he was Richard Woodford?  After Plaintiff responded "yes," Defendant Robillard told Plaintiff to accompany him out of the courtroom.  (Id.)

5.      After reaching the back of the courtroom Plaintiff was placed under arrest and handcuffed by Deputy Robillard.  (Id.)  While placing Plaintiff under arrest Deputy Robillard stated that Plaintiff was being arrested on an outstanding warrant from the State of Nevada.  (Compl. at 4.)  Deputy Robillard also initially noted this in the Washington County Sheriff's Office Jail Log.  (Decl. of Richard Shane Robillard (Doc. No. 59) ¶ 10.)  However, Robillard later determined that the warrant for Plaintiff's arrest had actually been issued by Judge Ludlow on August 13, 2009.  (Robillard Decl. ¶ 11.)  Deputy Robillard correctly noted this in the booking information recorded on the Washington County Sheriff's Office website.  (Robillard Decl. ¶ 14.)

6.      At the time of his arrest on November 17, 2009, Plaintiff had an injured right wrist.  (Compl. at 4.)  Plaintiff had previously undergone surgery on the wrist and had visible surgical scars.  (Robillard Decl., Ex. 4.)  While being placed under arrest Plaintiff tried to inform Deputy Robillard about his wrist injury but Robillard proceeded to handcuff Plaintiff as usual.

(Robillard Decl. ¶ 5.)  Robillard denies that Plaintiff told him about having a wrist injury. (Robillard Decl. ¶ 6.)

      7.     As part of the arrest Deputy Robillard conducted a routine search of Plaintiff for weapons and/or contraband. (Robillard Decl. ¶ 7.)  Plaintiff was then turned over to Deputy Smith (f/k/a Delane Shaw) for transport to a holding cell.  (Robillard Decl. ¶ 8.)  After taking custody of Plaintiff, Deputy Smith escorted Plaintiff to a holding cell located downstairs in the Washington County Courthouse.  (Doc. 49, Ex. 4, Washington County Sheriff's Office's Jail Log, at 9.)

      8.     After placing Plaintiff in a holding cell Deputy Smith switched Robillard's handcuffs for a jail restraints.  (Smith Decl. ¶ 5.)  While Smith was making the change Plaintiff told her that he had "a problem with his wrist."  In response, Deputy Smith took additional care while cuffing Plaintiff.  (Id.)

      9.     Awhile later, Plaintiff told Deputy Smith that "his wrist was killing him," and that he also had a heart problem.  (Smith Decl. ¶ 6.)  Although Smith checked Plaintiff's handcuffs and determined that they were not too tight, she still loosened them further.  (Id.)  Smith also told Plaintiff that there was an "EMT" available if he needed medical attention, but Plaintiff declined. (Smith Decl. ¶ 9.)

      10.    About an hour later Plaintiff was taken before Judge Ludlow who explained to Plaintiff that he had been arrested pursuant to a bench warrant issued after Plaintiff failed to appear at an earlier hearing.  (Doc. No. 49, Ex. 5, Audio Recording.)  Plaintiff denied failing to appear for any hearing and the court clerk noted that there was no record of the notice of hearing

ever being served upon Plaintiff.  (Id.)  Judge Ludlow then recalled the Bench Warrant and

ordered Plaintiff released with instructions to return for an Order to Show Cause hearing on

November 20, 2009.  (Id.)  While before Judge Ludlow on November 17, 2009, Plaintiff made

no mention of his wrist injury or of excessive force being used against him by Deputy Robillard.

(Id.)

11.    Plaintiff later submitted a GRAMA request to Washington County Defendants for

a copy of any report of his arrest on November 17, 2009.  (Compl. at 14.)   Washington County

Defendants printed a copy of that record on May 20, 2010, and provided it to Plaintiff.  (Doc.

No. 59, Ex. 6, GRAMA Request.)

12.    Plaintiff never filed a Notice of Claim under the Governmental Immunity Act of

Utah regarding the wrist injury he allegedly sustained during his arrest.  However, on March 29,

2011, he did file a "Report of Accident" with the Utah Division of Risk Management.  (Doc. No.

49, Ex. 7, Report of Accident.)

### C. Sufficiency of Plaintiff's Constitutional Claims

Plaintiff's Complaint asserts the following civil rights claims arising under federal law:

(1) unreasonable search and seizure under the Fourth Amendment based on Plaintiff's alleged

arrest without a warrant or probable cause, and on the search of his person incident to arrest; (2)

use of excessive force in violation of the Fourth Amendment based on alleged injuries to

Plaintiff's wrist sustained during handcuffing; (3) cruel and unusual punishment under the

Eighth Amendment based on alleged confinement in a dirty cell and denial of toilet paper for

approximately an hour and a half; (4) denial of equal protection under the Fourteenth

Amendment based on being treated differently from other prisoners at the Purgatory Correctional

Facility; and, (5) conspiracy to deprive Plaintiff of his civil rights in violation of 42 U.S.C. §

1985.  The Court will address each of these claims in turn.

### 1.  Unreasonable Search and Seizure

Plaintiff alleges that his Fourth Amendment rights against unreasonable search and

seizure were violated based on his alleged arrest without a valid warrant or probable cause, and

based on the search of his person incident to that arrest.[8]

Regarding the circumstances of his arrest, the evidence here clearly refutes Plaintiff's

assertion that no warrant for his arrest existed at the time he was taken into custody at the

Washington County Courthouse.  The record shows that a Bench Warrant was issued for

Plaintiff's arrest on August 13, 2009, by Judge Eric A. Ludlow of the Utah Fifth District Court,

based on Plaintiff's failure to appear for an Order to Show Cause hearing on August 7, 2009.

Plaintiff has not presented any reliable evidence to seriously challenge the authenticity of this

warrant.  And, even if Plaintiff could show that the warrant was issued without probable cause,

the arresting officers would be entitled to absolute judicial immunity for serving the facially

valid warrant.  *Valdez v. City and County of Denver*, 878 F.2d 1285 (10th Cir. 1989.)

Plaintiff makes several arguments to support his contention that the Bench Warrant did

not exist at the time of his arrest, but was fabricated later in response to this lawsuit.  First,

Plaintiff points out that the Bench Warrant is not file stamped by the court.  As previously stated,

---

[8]  Plaintiff also asserts that he never received *Miranda* warnings, however, this is irrelevant because he does not allege ever being questioned by law enforcement while in custody.

however, this fact does not undermine the validity of the warrant because the evidence clearly shows that the warrant was properly executed and promptly entered on the court docket prior to Plaintiff's arrest.  Second, Plaintiff asserts that Officer Robillard initially misstated that the warrant was from Nevada but later found that it was issued by the Utah Fifth District Court. Although Robillard admits misstating that the warrant was issued out of Nevada, rather than Utah, this is irrelevant given Robillard's correct belief that there was a facially valid warrant outstanding for Plaintiff's arrest.  It was not necessary for Robillard to actually present the warrant for Plaintiff's inspection at the time of the arrest, or to explain accurately any details regarding the warrant.  Third, Plaintiff notes that he had several interactions with law enforcement between the time the warrant was issued and when he was arrested and asserts that if the warrant existed it would have been discovered then.  Again, although this might be relevant to whether the warrant was properly recorded in various law enforcement databases, it does not refute the fact that the warrant was properly executed and recorded on the Fifth District Court's docket, which is where Plaintiff was actually arrested.  The fact that Plaintiff was not arrested on the Bench Warrant in earlier interactions with various law enforcement officers does not show that the warrant did not exist.  Finally, Plaintiff asserts that Judge Ludlow's clerk acknowledged on the record during the hearing following Plaintiff's arrest that Plaintiff was never given notice of the underlying Order to Show Cause hearing which resulted in the warrant. However, the audio recording of the hearing following Plaintiff's arrest does not support his contention that Judge Ludlow or his clerk acknowledged no warrant was issued.  While the clerk can be vaguely heard in the background explaining that the Order to Show Cause underlying the

12

warrant was never served upon the parties, she never states that a warrant was not issued.[9]  While this may have been grounds to recall the warrant, as Judge Ludlow subsequently did, it does not refute the fact that Defendants were acting on a facially valid warrant when they arrested Plaintiff and were entitled to judicial immunity for doing so.

Regarding the search of Plaintiff's person and belongings incident to his arrest, the record does not show this search to have been unreasonable under the Fourth Amendment.  Plaintiff asserts that the search was unreasonable because Defendants searched his wallet, shoes and other belongings.  However, it is well-established that searches of an individual and his wallet or other personal property are permissible as incident to a lawful arrest when conducted shortly afterward at the jail or place of detention for the purpose of discovering concealed weapons or as part of the necessary inventory of an accused's belongings.  *U.S. v. Gardner*, 480 F.2d 929, 931 (10th Cir. 1973).  Plaintiff's portrayal of this search as an impermissible "strip search" is completely unsupported and contrary to the evidence in the record.

Thus, the Court concludes that Plaintiff has not met his burden of showing that genuine issues of material fact exist which preclude summary judgment on his search and seizure claims.

### 2.  Excessive Force

Plaintiff alleges that Defendants used excessive force against him during his arrest and detention in violation of the Fourth Amendment.  Specifically, Plaintiff alleges that at the time of

---

[9]  Plaintiff alleges that after the hearing was completed and he was ordered released, Defendant Smith asked whether the restraints should be removed and Judge Ludlow stated, "Yes, there was no warrant!"  However, Plaintiff admits that this alleged interaction is not on the audio recording and he has not presented any other evidence to support it.

his arrest he had a severely injured wrist on which he had undergone multiple surgeries and was still experiencing complications. Plaintiff states that despite his warning that his wrist was injured Defendant Robillard handcuffed Plaintiff harshly causing severe pain and further injury to his wrist. Plaintiff alleges that when Defendant Smith later exchanged the handcuffs for restraints Plaintiff also tried to tell her about his wrist injury but she also ignored him and further injured his wrist. Plaintiff claims he had another surgery on his wrist in 2010 to remove the pins that were allegedly dislodged as a result of Defendants' actions. Although Plaintiff states that he was scheduled for additional surgeries on the wrist in 2011, it is not clear what happened with this additional treatment.

### a. Legal Standard

The Tenth Circuit has held that all claims of excessive force during arrest or confinement before a defendant is formally charged or brought before a judicial officer are governed by the objective reasonableness standard of the Fourth Amendment. *Austin v. Hamilton*, 945 F.2d 1155, 1159-62 (10th Cir. 1991) (overruled on other grounds). The Supreme Court has explained that the touchstone of the Fourth Amendment reasonableness inquiry is whether the officers' actions are "objectively reasonable." *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871 (1989). The reasonableness of a seizure depends not just on why or when it is made, but also on how it is accomplished. *Id*. Thus, the inquiry focuses not on the officers' particular motivations, nor on the arrestee's subjective perception of the intrusion, but on "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id*. at 397. "The 'reasonableness' of a particular use of force must be judged from the

14

perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396.   Moreover, the Fourth Amendment "does not require [police] to use the least intrusive means in the course of a detention, only reasonable ones."  *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005) (citation omitted).

While the Fourth Amendment reasonableness inquiry cannot be reduced to a simple formula or bright line test, the Supreme Court has delineated three, non-exclusive factors relevant to analyzing the reasonableness of force used during arrest, these include: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396.  Although these factors focus primarily on the circumstances confronting an officer before and during an arrest, the Tenth Circuit has observed that they are no less relevant after a suspect has been arrested but remains in the custody of the arresting officer.  *Austin v. Hamilton*, 945 F.2d 1155, 1160, n. 3 (10th Cir. 1991).

Finally, to support an excessive force claim, the plaintiff must establish that he suffered significant injury or that the defendant's actions were sufficiently reprehensible.  *Pride v. Kansas Highway Patrol*, 793 F. Supp. 279, 282 (D. Kan. 1992) (quoting *Frohmader v. Wayne*, 958 F.2d 1024, 1026 (10th Cir.1992)).  It is well recognized that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (citation and quotation marks omitted).  Instead, to make out an excessive force claim, a plaintiff must show "some actual injury that is not *de minimus*, be it physical or emotional."  *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir.  2007).  Although

15

proof of physical injury such as visible cuts, bruises, etc., is not an essential element of an excessive force claim, "the absence of injury in the context of the totality of the circumstances may suggest the absence of excessive force." *Id*. at 1129 n. 24.

### b. Sufficiency of Evidence

Even viewing the evidence in the light most favorable to Plaintiff, the record does not support the conclusion that Defendants used excessive force against Plaintiff in violation of the Fourth Amendment. Although it is questionable whether Defendants were subjectively aware of Plaintiff's wrist injury at the time they handcuffed or shackled him, this question is immaterial given Plaintiff's failure to present evidence showing that Defendants caused him significant harm. In fact, Plaintiff has not presented any medical records, expert testimony or other documentation showing that his wrist was injured by Defendants.

The only support for Plaintiff's assertion that Defendants aggravated his wrist injury is his own self-serving statements to that effect. However, Plaintiff's statements are throughly undermined by the undisputed evidence in the record showing that: (1) Plaintiff's wrist was already injured before his arrest; (2) Plaintiff did not request medical treatment for his wrist either while he was in custody or immediately thereafter; (3) Plaintiff did not complain about any wrist injury when he was brought before Judge Ludlow shortly after his arrest; and (4) Plaintiff has not presented any medical evidence showing that his preexisting wrist injury was exacerbated by Defendants' actions.

Plaintiff admits that he originally injured his wrist in 1989 and underwent surgeries in 2006 and 2007 (Doc. No. 68 at 3 ¶ 3) during which pins were inserted that later failed. During

the contempt hearing held in the child support enforcement action on January 27, 2010, Plaintiff

discussed his pre-existing wrist injury and the ongoing complications he was experiencing,

which made him unable to work and pay child support.  Plaintiff stated that prior to his arrest on

November 17, 2009, he had already undergone fourteen surgeries on his wrist at a total cost of

more than one million dollars.  (*Martinez* Report, Ex. 5, Audio Recording of hearing held Jan.

27, 2010, at 14:54:40-14:58:01).  Plaintiff admitted that when he was arrested he had been

waiting for more than six months to have the failed pins removed.  (*Id.*, at 14:57:48 "your officer

did his job but there was pins in my hand that was supposed to be pulled out by workman's comp

six months ago . . . .")  Plaintiff also stated that he did not "blame the court" for any

complications with his wrist, instead, he merely mentioned his wrist problem as the reason for

his failure to pay child support.  (*Id.*, at 14:58:20 "I'm not blaming the court . . . .")  At no time

during this hearing did Plaintiff state that he suffered significant additional injury during his

arrest.

     The only instance cited by Plaintiff where he mentioned being injured by Defendants was

in a Show Cause hearing held almost six months afterward on May 7, 2010, when Plaintiff was

again brought before Judge Ludlow to explain his ongoing failure to pay child support.  During

that hearing Plaintiff stated that the reason he had missed child support payments since

November 2009 was because of the injury he sustained during his arrest.  (Audio Recording of

Review Hearing held May 7, 2010, at 13:40:08 ("If my hand gets broke in court how am I

supposed to go to work . . . ?"))  Plaintiff recounted how Defendant Robillard injured him,

stating "as we went through the doors [Robillard] went to pull my hands back and I said don't

pull my right hand, it doesn't move, I've had surgeries, and he did, he was doing his job and it snapped my wrist . . . ." (Id. at 14:30:20-14:30-20.)  Plaintiff did not make any further statements about his alleged injury during this hearing, nor did he present any evidence at that time to support this version of events.  Judge Ludlow ultimately rejected Plaintiff's explanation and ordered him to serve two days in jail for failure to pay child support as ordered.

Significantly, Plaintiff did not report feeling his wrist snap or experiencing any other trauma either when it allegedly occurred or immediately thereafter.  According to the Jail Logs, Plaintiff only complained after being placed in a holding cell that his handcuffs were hurting his wrist, and he asked that they be removed or adjusted.[10] (*Martinez* Report, Ex. 4, at 9-14.)  There is no evidence that Plaintiff told Defendant Smith anything about an injury caused by Defendant Robillard just minutes earlier.  And, when Smith asked Plaintiff whether he wanted to have an EMT examine him, Plaintiff declined.  (*Id*. at 9.)

Finally, Plaintiff has not presented any medical evidence to support his contention that his wrist injury was aggravated during his arrest.  Although Plaintiff has presented evidence of his preexisting injury and various surgeries, there is nothing in the medical record directly related to the November 17, 2009 incident.  For instance, Plaintiff has not shown that he went to a doctor immediately after his arrest for a followup examination or treatment.  Nor has he

_____

[10]  Plaintiff vaguely challenges the admissibility of the Jail Logs completed by Defendants on the date of his arrest (*Martinez* Report, Ex. 4, at 9-14), asserting that they were not produced until June 2010, after he made numerous requests for them.  (Woodford Aff. (Doc. No. 69) at 6; Pl's Reply Brief Re: Mot. Strike (Doc. No. 68) at 6 ¶12.)  However, the fact that they were not turned over to Plaintiff until later does not refute the fact that they appear to have been entered into the computer on the date of his arrest.  Moreover, even if they were not completed until some time later, as Plaintiff contends, that would not make them inadmissible.

presented any x-rays or medical records showing that the condition of his wrist was significantly worse following his arrest.  Thus, aside from Plaintiff's unsubstantiated lay opinion, there is no evidence to show that Defendants caused Plaintiff any injury.

Not only has Plaintiff failed to show that he suffered any significant injury, the record also does not support the finding that Defendants' actions were so reprehensible as to violate the Fourth Amendment.  *See Pride*, 793 F. Supp. at 282.  As previously noted, there is some doubt whether Robillard actually heard or understood Plaintiff's statement about his injured wrist before placing Plaintiff in handcuffs.  However, even assuming that Robillard was aware, there is no evidence that he disregarded the statement or acted maliciously or sadistically toward Plaintiff.  While Robillard did complete the standard handcuffing procedure, there is no evidence that he used extraordinary force, or that Plaintiff showed obvious signs of severe pain which were ignored.  Moreover, given the fact that it was standard procedure to handcuff all individuals placed under arrest at the court, Robillard's decision to handcuff Plaintiff was not out of the ordinary but was "'objectively reasonable' in light of the facts and circumstances confronting [him]."  *Graham*, 490 U.S. at 397.  Nor is there any evidence showing that Defendant Smith acted reprehensibly.  Instead, the record shows that she responded promptly and appropriately to Plaintiff's complaints about his wrist hurting by carefully adjusting his restraints.

In sum, given the lack of evidence to support Plaintiff's allegations, as well as the self-serving nature and timing of his statements, the Court concludes that no reasonable fact-finder could conclude that Plaintiff suffered any significant injury during his arrest.  Thus, Defendants are entitled to summary judgment on this claim.

### 3.  Conditions of Confinement

Plaintiff asserts that he was subjected to cruel and unusual punishment based on the conditions of his confinement at the Washington County Courthouse.  Specifically, Plaintiff alleges that he was held in a "disgusting, filthy, smelly cell" (Compl. at 4) and was denied toilet paper to use the bathroom for approximately an hour and a half.

Although pretrial detainees are protected under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment, *see Lopez v. LeMaster,* 172 F.3d 756, 759 n. 2 (10th Cir. 1999) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S. Ct. 1861 (1979)), the Tenth Circuit has held that the Eight Amendment deliberate indifference standard provides the benchmark for all conditions of confinement claims, regardless of whether the plaintiff is a prisoner or a pretrial detainee.  *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002).  To establish deliberate indifference based on inhumane conditions of confinement, a plaintiff must satisfy both an objective and a subjective component.  The objective component requires that the deprivation be sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities.  *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970 (1994).  Under the subjective component, the official must have acted with a sufficiently culpable state of mind, namely "deliberate indifference to inmate health or safety."  *Id*.  The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result."  *Id*. at 835.  Thus, "deliberate

indifference" has been equated with "recklessness," in which "a person disregards a risk of harm of which he is aware." *Id*. at 836-37.

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id.* As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations . . . may meet the standard despite a shorter duration." *Id.*

Plaintiff's allegations fall far short of the threshold required to make out a conditions of confinement claim. First, Plaintiff has not shown that he was subjected to sufficiently harsh conditions. Plaintiff's bare allegations regarding the cleanliness of his cell or the lack of toilet paper do not show that he was exposed to any significant risk of harm. Moreover, there is no evidence that Defendants were subjectively aware of these conditions but showed deliberate indifference by failing to remedy them. In fact, Defendant Smith denies that Plaintiff ever complained about the lack of toilet paper. (Smith Decl. ¶ 8.) Finally, given the brief length of Plaintiff's detention he cannot possibly make out a conditions-of-confinement claim based on the relatively minor deprivations he alleges.

#### 4.  Equal Protection

Plaintiff's Complaint vaguely asserts that Washington County officials denied Plaintiff equal protection of the laws, in violation of the Fourteenth Amendment, based on his treatment while confined in the Washington County Jail.  (Compl. at 14, Count 21)  Plaintiff alleges that during his two-day detention for failure to pay child support he "was dressed in a black and white jersey while the other inmates were in green and white," and, that instead of placing Plaintiff in a cell like the longer term prisoners he was housed in a trailer.  (Id. at 14.)  Plaintiff does not explain how such minor distinctions significantly prejudiced him in any way. Moreover, Plaintiff admits that his differential treatment was based on the relatively short length of his confinement, which shows that he was not similarly situated to the other prisoners whom he alleges received better conditions.  Thus, Plaintiff's allegations are insufficient to state a claim for denial of equal protection under the Fourteenth Amendment.

#### 5.  Conspiracy to Deny Civil Rights: 42 U.S.C. §1985(2)

Plaintiff alleges that Defendants conspired to deprive him of his civil rights in violation of 42 U.S.C. § 1985(2) by preventing him in the child support enforcement proceedings from discussing his arrest and alleged injury.  Plaintiff alleges that rather than entertaining his claims about his wrist injuries Defendants repeatedly focused the hearings on the issue of his unpaid child support payments, making him feel like a "dead beat dad."  (Compl. at 13, Count 19.)

To state a claim under 42 U.S.C. § 1985(2) a plaintiff must allege facts showing that two or more persons conspired to deter by force, intimidation, or threat, any party or witness from attending court and testifying freely, fully, and truthfully.  *Brever v. Rockwell Int'l Corp.*, 40

F.3d 1119, 1126 (10th Cir. 1994).  The elements of such a claim are (1) a conspiracy, (2) to deter

testimony by force or intimidation, and (3) an injury.  *Abercrombie v. City of Catoosa*, 896 F.2d

1228, 1231 (10th Cir. 1990).

Plaintiff's evidence does not satisfy any of these elements.  Plaintiff has not presented

any facts showing an understanding or agreement among Defendants to prevent Plaintiff from

testifying in court.  In fact, the record clearly shows that Plaintiff was allowed to raise the issue

of his arrest and alleged injury during his Review Hearing on May 7, 2010.  (*Martinez* Report,

Ex. 5.)  Although the prosecuting attorney and the court both rejected the issue as irrelevant to

the matter at bar, Plaintiff was never deterred "by force, intimidation, or threat" from discussing

it.  Moreover, even if Plaintiff could show that he was deterred in such a manner, he has not

shown any resulting injury.  Plaintiff's statement that he was made to feel like a "dead beat dad"

is simply not sufficient to show a cognizable injury under Section 1985(2).

### V.  State Law Claims

Plaintiff's Complaint asserts numerous additional claims under Utah law.  However,

under 28 U.S.C. § 1367(c)(3) a district court may decline to exercise supplemental jurisdiction

over state law claims if the court has dismissed all claims over which it has original jurisdiction.

*See* 28 U.S.C.S. § 1967(c)(3) (2007).  Having concluded that Defendants are entitled to summary

judgment on each of Plaintiff's federal claims, the Court declines to exercise supplemental

jurisdiction over Plaintiff's state law claims and hereby dismisses them without prejudice.

### VI.  Conclusion

Based on the substantial record in this case, the Court finds that Plaintiff has not met his burden of showing that there are any genuine issues of material fact remaining for trial.  In addition, the evidence here does not support the conclusion that Plaintiff's rights under the constitution or laws of the United States were violated.  That being the case, there is no need to address whether Plaintiff has made a sufficient showing of municipal liability against Washington County, or whether the individual defendants are entitled to qualified immunity.

### ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

(1) Plaintiff's Motion to Compel Discovery (Doc. No. 54) is **DENIED**;

(2) Plaintiff's Motion to Strike (Doc. No. 64) is **DENIED**;

(3) Plaintiff's supplemental state law claims are dismissed without prejudice under 28 U.S.C. § 1367(c)(3);

(4)  Defendants' Motion for Summary Judgment (Doc. No. 52) is **GRANTED**; and,

(5) this case is **CLOSED**.

DATED this 4th day of April, 2013.

BY THE COURT:

CLARK WADDOUPS
United States District Judge